Filed 11/5/20

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D077361 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SWF1101646) |
| PATTY ANN LAMOUREUX, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside, John D. Molloy, Judge.  Affirmed as modified.

Michelle May Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, Lynne G. McGinnis, and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

I

INTRODUCTION

Defendant Patty Ann Lamoureux appeals a judgment of conviction entered after the trial court vacated her felony murder conviction and

resentenced her under Penal Code section 1170.95, the resentencing provision of Senate Bill No. 1437 (2017–2018 Reg. Sess.).[1] Lamoureux was released from custody for time served and, although she had excess custody credits, the trial court exercised its discretion to place her on parole supervision for the statutory maximum of three years. (§ 1170.95, subd. (g).)

On appeal, Lamoureux contends the trial court erred in declining to apply her excess custody credits to offset, i.e., reduce or eliminate, her three-year parole supervision period. Additionally, she claims the court failed to articulate a rational method of computation when it imposed a $560 restitution fine (§ 1202.4, subd. (b)), erred by not applying her excess custody credits to offset her restitution fine (former § 2900.5, subd. (a); Stats. 2011, ch. 15, § 466, eff. Apr. 4, 2011), and miscalculated her presentence custody credits.

In *People v. Wilson* (2020) 53 Cal.App.5th 42 (*Wilson*), our colleagues in the First District, Division Three, concluded that a court is not required to apply excess custody credits to offset the parole supervision period of a person who is resentenced under Senate Bill No. 1437. As discussed more fully below, we agree with the *Wilson* decision. Therefore, we conclude the trial court in the present case did not err in declining to offset Lamoureux's parole supervision period by her excess custody credits.

As to Lamoureux's remaining arguments, we conclude Lamoureux forfeited her challenge to the restitution fine by failing to object in the trial court and the issue of her entitlement to additional presentence custody credits is moot. However, we conclude Lamoureux's excess custody credits must be applied to offset the restitution fine in its entirety.

---

1       All statutory references are to the Penal Code unless otherwise noted.

2

Therefore, we modify the judgment to reflect that Lamoureux's $560 restitution fine is deemed satisfied in full by application of her excess custody credits. In all other respects, the judgment is affirmed.

## II

## BACKGROUND

### A

In 2013, a jury convicted Lamoureux of conspiracy to commit robbery (§ 182) and felony murder (§ 187, subd. (a)). It found true special circumstance allegations that: (1) the murder was perpetrated during the commission of a robbery and a burglary (§ 190.2, subd. (a)(17)); and (2) Lamoureux, though not the actual killer, had an intent to kill or acted with reckless indifference to human life and was a major participant in the predicate felony (*id.*, subds. (c) & (d)). On April 19, 2013, the court sentenced Lamoureux to prison for life without the possibility of parole.

This court affirmed Lamoureux's murder and conspiracy convictions, but concluded the evidence was insufficient to support the jury's finding that she had an intent to kill or acted with reckless indifference to human life. (*People v. Miller* (Sept. 15, 2015, D067451) [nonpub. opn.], review den. Dec. 9, 2015.) Therefore, the court concluded Lamoureux was not eligible for a prison sentence of life without the possibility of parole. (*Ibid.*) The court affirmed the judgment, in part, reversed the judgment, in part, and remanded the matter for resentencing. (*Ibid.*) On remand, the trial court resentenced Lamoureux to a prison term of 25 years to life.

### B

On January 11, 2019, after the enactment of Senate Bill No. 1437, Lamoureux filed a petition to vacate her felony murder conviction and to obtain resentencing. The People opposed the petition, asserting Senate Bill

3

No. 1437 is unconstitutional because it amends Proposition 7 (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978)) and Proposition 115 (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990)), violates the separation of powers doctrine, and contravenes Marsy's Law (Prop. 9, as approved by voters, Gen. Elec. (Nov. 4, 2008)). The trial court summarily dismissed the petition after finding that section 1170.95—Senate Bill No. 1437's resentencing provision—amends Proposition 7.

On appeal, a divided panel of this court considered and rejected the People's constitutional challenges to Senate Bill No. 1437. (*People v. Lamoureux* (2019) 42 Cal.App.5th 241; see *People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270 [companion case concluding Senate Bill No. 1437 is constitutional].) Because we concluded there is no constitutional infirmity with Senate Bill No. 1437, we reversed the order summarily dismissing Lamoureux's resentencing petition.[2] (*Lamoureux*, at p. 246.)

Lamoureux was released on bail on January 27, 2020, and the court granted her petition on February 26, 2020. The court vacated the felony murder conviction and resentenced Lamoureux to the upper term of six years for her conspiracy conviction. It found Lamoureux was entitled to 3,590 credits for time served, consisting of 648 presentence actual time credits,

_____

2 Following our decision, numerous other Courts of Appeal concluded Senate Bill No. 1437 is constitutional. (*People v. Lippert* (2020) 53 Cal.App.5th 304; *People v. Nash* (2020) 52 Cal.App.5th 1041; *People v. Superior Court of Butte County* (2020) 51 Cal.App.5th 896; *People v. Lopez* (2020) 51 Cal.App.5th 589; *People v. Alaybue* (2020) 51 Cal.App.5th 207; *People v. Johns* (2020) 50 Cal.App.5th 46; *People v. Prado* (2020) 49 Cal.App.5th 480; *People v. Smith* (2020) 49 Cal.App.5th 85, review granted July 22, 2020, S262835; *People v. Bucio* (2020) 48 Cal.App.5th 300; *People v. Solis* (2020) 46 Cal.App.5th 762; *People v. Cruz* (2020) 46 Cal.App.5th 740; but see *Lippert*, at p. 314 (dis. opn. of Ramirez, J.); *Nash*, at p. 1084 (con. & dis. opn. of Poochigian, J.).)

2,474 postsentence actual time credits, and 468 postsentence conduct credits. It determined the custody credits exceeded the new custodial sentence and therefore found the new custodial sentence satisfied.  However, it placed Lamoureux on parole supervision for three years under section 1170.95, subdivision (g).  Over Lamoureux's objection, the court declined to apply her excess custody credits to offset the parole supervision period.

III

DISCUSSION

A

*Parole Supervision*

1

The Legislature enacted Senate Bill No. 1437, effective January 1, 2019, for the expressed purpose of "amend[ing] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life."  (Stats. 2018, ch. 1015, § 1, subd. (f).)  To effectuate this goal, Senate Bill No. 1437 amended sections 188 and 189, the statutory provisions pertaining to malice and the degrees of murder, respectively.  (*Id.*, §§ 2–3.)

Senate Bill No. 1437 also added section 1170.95, which permits persons with murder convictions to petition their sentencing courts to vacate their murder convictions and to be resentenced on any remaining counts. (§ 1170.95, subds. (a), (e).)  A person is entitled to vacatur of his or her murder conviction and resentencing if the following conditions are met:  (1) a charging document was filed against the person that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and

5

probable consequences doctrine; (2) the person was convicted of first or second degree murder following a trial or an accepted plea; and (3) the person could "not be convicted of first or second degree murder because of changes to [s]ection[s] 188 or 189" made by Senate Bill No. 1437. (*Id.*, subd. (a).)

At issue here is a portion of Senate Bill No. 1437's resentencing provision concerning parole supervision for resentenced defendants—section 1170.95, subdivision (g). Section 1170.95, subdivision (g) states: "A person who is resentenced pursuant to [section 1170.95] shall be given credit for time served. The judge may order the petitioner to be subject to parole supervision for up to three years following the completion of the sentence."

Lamoureux contends a person who is resentenced under Senate Bill No. 1437 is entitled, pursuant to section 1170.95, subdivision (g), to have his or her excess custody credits applied against any period of parole supervision the court imposes. She asserts she had 1,400 excess custody credits—enough to fully offset her three-year parole supervision period (which she calculates as 1,095 days). Because the excess custody credits exceeded the parole supervision period, Lamoureux claims the trial court erred in placing her on parole supervision.[3]

The proper construction of section 1170.95, subdivision (g) presents an issue of statutory interpretation subject to our de novo review. (*Christensen v. Lightbourne* (2019) 7 Cal.5th 761, 771.) "[W]e begin by looking to the statutory language. If the language is clear in context, our work is at an end.

---

[3] The parties dispute whether Lamoureux was entitled to additional custody credits. (See *post* Part. III.C.) However, Lamoureux assumes for purposes of discussion the trial court's determination of her custody credits was correct and calculates her excess custody credits as follows: custody credits as determined by the trial court (3,590) minus the new six-year custodial sentence imposed at resentencing (2,190 days) equals excess custody credits (1,400).

If it is not clear, we may consider other aids, including the statute's legislative history." (*National Lawyers Guild, San Francisco Bay Area Chapter v. City of Hayward* (2020) 9 Cal.5th 488, 498.)

2

In *People v. Morales* (2016) 63 Cal.4th 399 (*Morales*), the Supreme Court considered whether excess custody credits automatically apply to reduce or eliminate a person's parole period when the person is resentenced under Proposition 47 (Prop. 47, as approved by voters, Gen. Elec. (Nov. 4, 2014)). In answering this question, the Supreme Court interpreted a statutory provision that closely resembles section 1170.95, subdivision (g). Therefore, we begin our analysis with a discussion of the *Morales* decision.

In *Morales*, a defendant pleaded guilty to a felony offense and was sentenced to 16 months in prison. (*Morales*, *supra*, 63 Cal.4th at p. 403.) Eight months into the sentence, voters enacted Proposition 47, which reduced many non-violent crimes from felonies to misdemeanors and allowed persons serving felony sentences for reclassified offenses to petition to recall their sentences and to be resentenced for misdemeanor offenses. (*Ibid*.) The defendant filed such a petition, which was granted, and the trial court imposed a jail sentence of time served. (*Ibid*.) The court placed the defendant on parole for one year, even though he had excess custody credits. (*Ibid*.) On appeal, the defendant argued he was entitled to have his parole period offset by his excess custody credits under a provision contained within Proposition 47—section 1170.18, subdivision (d) (hereafter, the Proposition 47 statute). The Proposition 47 statute states: "A person who is resentenced … shall be given credit for time served and shall be subject to parole for one year following completion of his or her sentence, unless the court, in its discretion, as part of its resentencing order, releases the person from parole."

7

Applying well-established principles of statutory interpretation, the Supreme Court rejected the defendant's argument and concluded a court is not required to apply a person's excess custody credits to reduce or eliminate a parole period imposed under the Proposition 47 statute. (*Morales*, *supra*, 63 Cal.4th at p. 403.) The court reasoned the Proposition 47 statute, despite granting " 'credit for time served' " to persons who are resentenced under Proposition 47, "seems to require the one-year parole period subject to the court's discretion to order otherwise. It states that the person shall receive credit for time served *and* shall be subject to parole." (*Id.* at p. 405.) As the *Morales* court explained, the Proposition 47 statute establishes a "seemingly mandatory parole requirement (subject to the court's discretion) …." (*Ibid.*)

Next, the *Morales* court emphasized what the Proposition 47 statute does "*not* state, namely that credit for time served could reduce the period of parole." (*Morales*, *supra*, 63 Cal.4th at p. 406.) The court juxtaposed the Proposition 47 statute with section 2900.5, "the statute concerning presentence credit in ordinary cases …." (*Ibid.*) As the court explained, presentence credits can ordinarily be credited towards a sentence during a person's initial sentencing because section 2900.5 expressly provides that "(1) the person is entitled to credit for time served, and (2) the credit can

reduce or eliminate the period of parole."[4] (*Morales*, *supra*, 63 Cal.4th at pp. 405–406.) The Proposition 47 statute "states the first of these but *not* the second." (*Ibid.*) Because the Proposition 47 statute says nothing about excess credits reducing or eliminating a person's parole period, the court had "no reason … to assume the voters believed ... credit for time served could reduce the period of parole" when they enacted Proposition 47. (*Id.* at p. 406.)

Further, the *Morales* court reasoned that a custody credit offset would in many cases "undermine" the discretion of a court to impose a parole period for a person who is resentenced under Proposition 47. (*Morales*, *supra*, 63 Cal.4th at p. 405.) The court noted that a person seeking a recall of his or her sentence and resentencing under Proposition 47 "will have been serving a felony sentence and, therefore, will often have substantial excess credit for time served. In those cases, if excess credits can reduce or eliminate the period of parole, the court's discretion will be curtailed or eliminated." (*Ibid.*)

For all these reasons, the *Morales* court "conclude[d] that credit for time served does not reduce the parole period" under the Proposition 47 statute. (*Morales*, *supra*, 63 Cal.4th at p. 403.) The court held, instead, that the "electorate was informed, and it intended, that a person who benefitted from [Proposition 47] by receiving a reduced sentence would be placed on

---

[4] Section 2900.5 states, in relevant part as follows: "(a) … when the defendant has been in custody … all days of custody of the defendant … shall be credited upon his or her term of imprisonment …. *If the total number of days in custody exceeds the number of days of the term of imprisonment* to be imposed, *the entire term of imprisonment shall be deemed to have been served*…. [¶] …. (c) For the purposes of this section, *'term of imprisonment' includes* any period of imprisonment imposed as a condition of probation or otherwise ordered by a court in imposing or suspending the imposition of any sentence, and also includes any term of imprisonment, including any period of imprisonment prior to release on parole and any period of imprisonment and *parole*, prior to discharge, whether established or fixed by statute, by any court, or by any duly authorized administrative agency." (Italics added.)

parole for one year after completion of the reduced sentence, subject to the court's discretion to release the person from that parole." (*Ibid.*)

### 3

More recently, in *Wilson*, the Court of Appeal for the First District, Division Three considered the issue presented here—whether a court must apply the excess custody credits of a person who is resentenced under Senate Bill No. 1437 to offset the person's parole supervision period pursuant to section 1170.95, subdivision (g). Based in part on the *Morales* decision, the *Wilson* court determined the answer to this question is "no."[5]

As the *Wilson* court explained, section 1170.95, subdivision (g)—like the Proposition 47 statute—"states that (1) the [resentenced] person is entitled to credit for time served *and* (2) the court may order a parole period." (*Wilson, supra*, 53 Cal.App.5th at p. 50.) However, it "*does not state*—as section 2900.5 states—that the credit may be used to reduce or eliminate any parole period the court may impose." (*Id.* at p. 50.) Just as the *Morales* court concluded "the words 'credit for time served' in the Proposition 47 statute do not mandate the use of excess credit to reduce or eliminate the parole period," the *Wilson* court concluded the words "credit for time served" contained in section 1170.95, subdivision (g) do not, standing alone, mandate an excess credit offset against a person's parole supervision period. (*Id.* at p. 50.)

Further, the *Wilson* court recognized that a mandatory excess custody credit offset "would result in parole being eliminated or reduced in many cases governed by section 1170.95 as defendants seeking relief under that

---

[5] The Court of Appeal issued the *Wilson* decision after briefing in this appeal was complete. At our request, the parties filed supplemental briefing regarding the *Wilson* decision. Additionally, Lamoureux filed a request for judicial notice of the appellate briefing in the *Wilson* appeal, which we deny as unnecessary to the disposition of the appeal.

section will have been serving lengthy felony sentences for murder by the time they petition for resentencing." (*Wilson, supra*, 53 Cal.App.5th at p. 51; see § 190, subd. (a) [generally, the punishment is 25 years to life for first degree murder and 15 years to life for second degree murder].) This would "undermine the trial court's discretion in many cases." (*Morales, supra*, 63 Cal.4th at p. 405.)

Based on the language of section 1170.95, subdivision (g), as well as the provision's legislative history, discussed *post*, the *Wilson* court concluded a "court is not required to mechanically apply excess custody credits to reduce or eliminate the parole period imposed at a resentencing pursuant [to] section 1170.95. Instead, and notwithstanding excess custody credits, the court may exercise its discretion when deciding whether to order a period of parole." (*Wilson, supra*, 53 Cal.App.5th at p. 46.) "A contrary interpretation would require [the court] to add words to section 1170.95 that do not currently exist." (*Id.* at p. 52) We agree with, and adopt, the *Wilson* court's reasoning.

Additionally, we believe the *Morales* decision is instructive for another reason not discussed in the *Wilson* decision. "When legislation has been judicially construed and subsequent statutes on a similar subject use identical or substantially similar language, the usual presumption is that the Legislature intended the same construction, unless a contrary intent clearly appears." (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1135; see *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 199 ["[W]e must assume that, when enacting [legislation], the Legislature [is] aware of existing related laws and intend[s] to maintain a consistent body of rules."].)

Both section 1170.95, subdivision (g) and the Proposition 47 statute are contained in the same article of the Penal Code (Part 2, Title 7, Chapter 4.5,

Article 1). Both provisions address a resentenced person's entitlement to credit for time served and the discretion of the court to order the person to be subject to parole supervision. Further, as noted, both provisions contain substantially similar statutory language. Given these parallels between section 1170.95, subdivision (g) and the Proposition 47 statute, we presume the Legislature was aware of the *Morales* decision and its analysis of the Proposition 47 statute. We also assume the Legislature intended section 1170.95, subdivision (g) to receive the same construction the *Morales* court previously gave to the Proposition 47 statute. These presumptions bolster our conclusion that section 1170.95, subdivision (g)—like the Proposition 47 statute—does not require a court to automatically offset a resentenced person's parole supervision period by the person's excess custody credits.

4

Lamoureux raises four main arguments in support of her claim that the court erred in placing her on parole supervision for a period of three years.

*First*, Lamoureux tries to distinguish the *Morales* decision on grounds that the decision was based in part on Proposition 47's unique legislative history. In its discussion of legislative history, the *Morales* court assumed the voters who approved Proposition 47 "read and were guided by the ballot materials concerning the proposition." (*Morales*, *supra*, 63 Cal.4th at p. 406.) Included in these ballot materials was a Legislative Analyst analysis, which stated as follows: " 'Offenders who are resentenced would be required to be on state parole for one year, unless the judge chooses to remove that requirement.' " (*Id.* at pp. 406–407.) According to the *Morales* court, this analysis unambiguously "promised voters that offenders would be on parole for one year unless the judge deemed it not necessary…." (*Id.* at p. 407.)

12

This, in turn, suggested that the voters who approved Proposition 47 did not intend to enact an excess custody credit offset. (See *ibid.*)

The legislative history for Senate Bill No. 1437 is not especially robust on the topic of parole supervision for resentenced persons. But it is not silent either. An analysis of Senate Bill No. 1437 conducted by the Office of Senate Floor Analyses states that the bill "[a]llows the court to order [a] person granted relief to be subject to parole supervision for up to three years following the completion of the sentence." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1437 (2017–2018 Reg. Sess.) Aug. 30, 2018, p. 6.) Similarly, the Department of Finance's enrolled bill report states that "[i]f a person is granted relief, the bill allows the court to impose a term of parole supervision up to three years." (Dept. of Fin., Enrolled Bill Rep. on Sen. Bill No. 1437 (2017–2018 Reg. Sess.) Sept. 7, 2018, p. 2.) These legislative materials, like the official ballot pamphlet materials for Proposition 47, are "easy to understand and entirely unambiguous" in their assurance that a court will have discretion to impose parole supervision on a person who is resentenced. (*Morales*, *supra*, 63 Cal.4th at p. 407.)

Further, we acknowledge the general aim of Senate Bill No. 1437 was " 'to restore proportional responsibility in the application of California's murder statute' [citation] by eliminating harsh sentences for defendants who played only a relatively minor role in a felony in which a victim was killed, while still retaining murder liability for more culpable defendants." (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1143–1144.) But, as the *Wilson* court correctly recognized, section 1170.95 also "serves the 'objective of parole'—to provide 'supervision and counseling, to assist in the parolee's transition from imprisonment to discharge and reintegration into society.' " (*Wilson*, *supra*, 53 Cal.App.5th at pp. 50–51; see § 3000, subd. (a)(1) ["The Legislature finds

13

and declares that the period immediately following incarceration is critical to successful reintegration of the offender into society and to positive citizenship."].) In light of this goal, we believe "it is consistent with the legislative purpose behind section 1170.95 to allow a court to impose a parole period even where excess custody credits exist." (*Wilson*, at p. 51.)

Moreover, Lamoureux has directed us to no legislative history supporting *her* construction of section 1170.95, subdivision (g), and we are aware of none based on our own research. We would expect there to be at least some indication in the legislative history that a court must apply a person's excess custody credits against a parole supervision period, if the Legislature had intended the statute to require an offset of this nature. The absence of such legislative history suggests section 1170.95, subdivision (g) imposes no offset requirement. (*Wilson*, *supra*, 53 Cal.App.5th at p. 50 ["there is no legislative history" suggesting the parole supervision period must be offset by excess custody credits]; see *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1169 [interpreting statute by reference to "legislative history or, more precisely, the *absence* of legislative history"].)

*Second*, Lamoureux contends section 1170.95, subdivision (g), should be interpreted to ensure consistency with section 1170, subdivision (a)(3), a provision governing custody credits in the determinate sentencing context. Section 1170, subdivision (a)(3) states in part: "In any case in which the amount of preimprisonment credit … is equal to or exceeds any sentence imposed … the entire sentence shall be deemed to have been served … and the defendant shall not be actually delivered to the custody of the secretary or to the custody of the county correctional administrator. The court shall advise the defendant that he or she shall serve an applicable period of parole … unless the in-custody credits equal the total sentence, including both

14

confinement time and the period of parole …."  Courts have interpreted section 1170, subdivision (a)(3) "as providing that excess custody credits apply to a term of parole."  (*People v. Steward* (2018) 20 Cal.App.5th 407, 424; see, e.g., *In re Bush* (2008) 161 Cal.App.4th 133, 140–141.)

Section 1170, subdivision (a)(3) does not assist Lamoureux.  As the *Wilson* court explained, the *Morales* court's "discussion of section 2900.5 … is equally applicable to section 1170(a)(3) as both sections are identical as to the purpose and rules concerning the application of credit for time served to reduce or eliminate a term of imprisonment and parole.  [Citation.]  As we must assume the Legislature had in mind section 1170(a)(3) when enacting section 1170.95, it was aware of section 1170(a)(3)'s rule allowing credit for time served and credit to reduce or eliminate any period of parole.  We may further assume the Legislature was aware that the purpose behind the rule in section 1170(a)(3), like section 2900.5, was 'to equalize the treatment of … those who could not post bail.'  [Citation.]  Consequently, had the Legislature not intended to leave the issue of parole to the trial court's discretion in section 1170.95, it could have easily made specific reference to section 1170(a)(3) or otherwise modified the court's right to impose a parole period.  [Citations.]  Instead, the Legislature gave the trial court unfettered discretion to impose a period of parole at the completion of any sentence imposed under section 1170.95."  (*Wilson*, *supra*, 53 Cal.App.5th at pp. 51–52; see *Holmes v. Jones* (2000) 83 Cal.App.4th 882, 890 ["Where a statute with reference to one subject contains a given provision, omission of that provision from a similar statute concerning a related subject shows that a different intention existed."].)  We agree with the *Wilson* court.

*Third*, Lamoureux argues that section 1170.95, subdivision (g) establishes a deadline governing a person's parole eligibility that in many

15

respects resembles a statute of limitations. As best we can discern, she contends section 1170.95, subdivision (g) prohibits a resentenced person from being subject to parole supervision at any point later than three years after the completion of the person's sentence. She bases her argument on the following italicized language: "The judge may order the petitioner to be subject to parole supervision *for up to three years following the completion of the sentence*." (§ 1170.95, subd. (g), italics added.)

This argument raises the question: when is the sentence complete? According to Lamoureux, the sentence is complete upon the expiration of the new custodial term imposed during resentencing.[6] For example, Lamoureux claims her sentence was complete upon the expiration of her new six-year custodial term—a date that took place several years prior to her resentencing. Therefore, she contends she could not be subject to parole supervision later than three years after the expiration of her new six-year custodial term—a date that also preceded her resentencing.[7]

We are not persuaded by Lamoureux's construction of section 1170.95, subdivision (g). In our view, the most natural reading of the statute is that the first prepositional phrase ("for up to three years") modifies the noun immediately preceding it ("parole supervision"), thereby establishing that a resentenced person may be subject to parole supervision for up to three years

---

[6] After briefing was complete, Lamoureux sought judicial notice of an excerpt from the Operations Manual for the Department of Corrections and Rehabilitation, which she contends corroborates her argument as to when a sentence is complete. We deny the request, as the excerpt does not reference when the sentence is complete for a person who is resentenced under section 1170.95, let alone corroborate Lamoureux's argument.

[7] Lamoureux does not identify the date she believes her sentence was complete. However, she calculates April 27, 2019 as the last date on which she could be subject to parole supervision.

16

*in duration.* (See *People v. Tokash* (2000) 79 Cal.App.4th 1373, 1379, fn. 7 ["a prepositional phrase ordinarily modifies nouns or pronouns"].) But this phrase is silent on the issue of *when* a person may be subject to parole supervision. That subject is the province of the next prepositional phrase in the statute ("following the completion of the sentence"). (§ 1170.95, subd. (g).) Read in full, the statute thus provides that a person may be subject to parole supervision following the completion of the sentence and, furthermore, the parole supervision period may be up to three years in duration.

Our construction of section 1170.95, subdivision (g) is consistent with the *Morales* court's interpretation of the Proposition 47 statute. Like section 1170.95, subdivision (g), the Proposition 47 statute provides that a person may be subject to parole for a defined period of time following completion of his or her sentence. (§ 1170.18, subd. (d) [a person "shall be subject to parole for one year following completion of his or her sentence"].) The *Morales* court impliedly determined the defined period of time established the maximum *duration* of the parole period, not a deadline akin to a statute of limitations. (See *Morales, supra,* 63 Cal.4th at p. 405 [the Proposition 47 statute "seems to require the one-year parole period"]; *id.* at p. 409 ["the voters imposed a price for [the] benefit [of resentencing]—parole for one year"].) Further, the court concluded a resentenced person could "be placed on parole *when released* on the reduced sentence," not merely upon the completion of the person's new custodial term. (*Id.* at p. 409, italics added; see *People v. Hronchak* (2016) 2 Cal.App.5th 884, 890 ["An individual who successfully petitions for resentencing under Proposition 47 is subject to a one-year term of parole supervision *following his or her release from custody*"], italics added, citing *Morales*, at pp. 404–405.) These conclusions

17

confirm our interpretation of the nearly-identical statute at issue here, section 1170.95, subdivision (g).

Further, we note that Lamoureux's interpretation of section 1170.95, subdivision (g)—whereby a three-year clock begins ticking upon the expiration of the new custodial term—would in many cases mean a person would be subject to parole supervision only while the person is in custody, but not after the person's release from custody. This runs contrary to the very notion "that a parole term begins only after release from prison." (*In re Lira* (2014) 58 Cal.4th 573, 582; see *People v. Nuckles* (2013) 56 Cal.4th 601, 608 ["It is apparent that a term of imprisonment and the onset of parole are distinct phases under the legislative scheme."].)

Having concluded that section 1170.95, subdivision (g) does not establish a three-year deadline after which a resentenced person may no longer be subject to parole supervision, we must still determine whether the trial court placed Lamoureux on parole supervision "following the completion of the sentence," as section 1170.95, subdivision (g) requires. We conclude it did. Assuming without deciding that Lamoureux completed her sentence when her new six-year custodial term expired, the court properly placed her on parole supervision "following the completion of the sentence" because it ordered her to undergo parole supervision upon her release from custody. Her release from custody occurred well after—i.e., following the completion of—her new six-year custodial term.

*Fourth*, Lamoureux claims the Legislature rationally could limit a court's discretion to impose parole supervision on a defendant who has been resentenced under Senate Bill No. 1437. She contends such a limitation is consistent with Senate Bill No. 1437's stated purpose of ensuring "that the law of California fairly addresses the culpability of the individual …."

18

(Stats. 2018, ch. 1015, § 1, subd. (e).) We have no occasion to determine the rationality of such a limitation because section 1170.95, subdivision (g), does not curtail a court's discretion to impose parole supervision in the manner Lamoureux suggests.

5

In sum, we conclude section 1170.95, subdivision (g) does not require a court to automatically apply a person's excess custody credits to offset the person's parole supervision period. We conclude, instead, that a court has discretion to order a resentenced person to be subject to parole supervision for up to three years in duration upon the person's release from custody. Therefore, we discern no error in the trial court's order placing Lamoureux on parole supervision for three years upon her custodial release.

B

*Restitution Fine*

1

At the initial sentencing on April 19, 2013, the trial court imposed a restitution fine of $560 under section 1202.4, subdivision (b). (*People v. Miller*, *supra*, D067451.) In her direct appeal, Lamoureux challenged the restitution fine. She claimed the court misapplied the restitution fine statute in a manner that violated ex post facto principles because the court allegedly imposed the minimum restitution fine in effect *at the time of sentencing* ($280), multiplied by two for the number of convictions, rather than the minimum restitution fine in effect *at the time she committed the offenses* ($200), multiplied by two for the number of convictions. (*Ibid.*)

In our decision affirming the judgment, in part, and reversing the judgment, in part, we noted the $560 restitution fine was "conspicuously equal to the inapplicable minimum fine in effect at the time of sentencing

19

multiplied by the number of Lamoureux's convictions." (*People v. Miller*, *supra*, D067451)  However, because we were remanding the matter for purposes unrelated to the restitution fine, we did not determine whether the trial court violated ex post facto principles in setting the restitution fine.  We instructed the court "to modify the restitution fine in accordance with the applicable statutory minimum if appropriate," yet clarified that the court was "not precluded from setting the fine at the greater amount previously imposed [i.e., at $560] so long as it [did] so using a rational method of computation."  (*Ibid*.)  The record does not indicate whether the court imposed a restitution fine at the resentencing hearing on remand and, if so, in what amount.

As noted, Lamoureux thereafter filed a Senate Bill No. 1437 petition to vacate her murder conviction and to be resentenced, which the court granted. During resentencing, the court again imposed a $560 restitution fine.  Now, Lamoureux challenges the restitution fine on grounds that the court failed to employ a rational method of computation when setting the amount of the restitution fine.

The People assert Lamoureux forfeited her argument by failing to object to the restitution fine in the trial court.  We agree.  By not objecting to the restitution fine, Lamoureux forfeited the issue for our consideration. (*People v. Pinon* (2016) 6 Cal.App.5th 956, 968 (*Pinon*); *People v. Garcia* (2010) 185 Cal.App.4th 1203, 1218.)  Further, the $560 restitution fine is less than the statutory maximum of $10,000.  (§ 1202.4, subd. (b)(1).)  Therefore, the sentence is not an unauthorized sentence subject to our correction on appeal despite Lamoureux's failure to object in the trial court.

Lamoureux claims her trial counsel was ineffective because he did not object to the restitution fine.  We disagree.  "If, as here, the record on appeal

sheds no light on why counsel acted or failed to act in the manner challenged, an appellate court must reject [a] claim of ineffective assistance unless there can be no satisfactory explanation for counsel's conduct." (*People v. Kendrick* (2014) 226 Cal.App.4th 769, 778.) We believe there is a satisfactory explanation for counsel's conduct. During resentencing, the trial court imposed the upper term for Lamoureux's conspiracy conviction. Given the court's imposition of the harshest possible custodial penalty, Lamoureux's counsel reasonably could have refrained from objecting to the restitution fine for fear that an objection would have caused the court to reassess and *increase* the restitution fine from $560 to an amount upwards of the statutory maximum of $10,000.

2

Next, we consider whether Lamoureux's excess custody credits must be applied to offset her $560 restitution fine. The People concede the excess custody credits offset the restitution fine and we accept the concession.

At the time of Lamoureux's offense in 2011, section 2900.5 provided in pertinent part as follows: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody … all days of custody of the defendant, including days … credited to the period of confinement pursuant to Section 4019, shall be credited upon his or her term of imprisonment, or credited to any fine on a proportional basis, including, but not limited to, base fines and restitution fines, which may be imposed, at the rate of not less than thirty dollars ($30) per day, or more, in the discretion of the court imposing the sentence. If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served."

21

Under the plain terms of section 2900.5, as the statute existed at the time of the offense, the trial court was required to apply Lamoureux's excess custody credits to reduce her $560 restitution fine at a rate of no less than $30 per day of excess custody credit. As previously noted, Lamoureux had a minimum of 1,400 excess custody credits. Even if the court were to reduce the restitution fine by the statutory minimum of $30 per day of excess custody credit, a mere 19 days of excess custody credits would offset the restitution fine in its entirety. Therefore, we deem the restitution fine satisfied in full.[8] (See *People v. Morris* (2015) 242 Cal.App.4th 94, 101–103 [deeming defendant's restitution fine satisfied under version of section 2900.5 in effect at the time of defendant's offense].)

## C

### *Presentence Conduct Credits*

When the trial court sentenced Lamoureux on April 19, 2013, it determined she had 648 presentence actual time credits and zero presentence conduct credits. Lamoureux asserts, and the People do not dispute, that the court denied her presentence conduct credits because she stood convicted of felony murder and the court therefore applied section 2933.2, subdivision (c). Section 2933.2, subdivision (c), is an exception to the rule that "detainees in local institutions are usually able to earn credit against their eventual sentence for good behavior and work performed." (*People v. Brown* (2020) 52

---

[8]   Earlier in the opinion, we concluded the trial court was not required to apply Lamoureux's excess custody credits to reduce her *parole supervision period* based on the language and legislative history of section 1170.95, subdivision (g). However, section 1170.95, subdivision (g) "says nothing about *fines*, and thus, unlike the issue of parole, it does not supplant the legislative intent of section 2900.5 as it applies to fines." (*Pinon, supra*, 6 Cal.App.5th at pp. 966–967, italics added.)

Cal.App.5th 899, 903; see § 4019.) It "totally eliminate[s] presentence conduct credit for defendants convicted of murder." (*Brown*, at p. 903.)

When the court granted Lamoureux's Senate Bill No. 1437 petition, vacated her murder conviction, and resentenced her, the court again determined she had 648 presentence credits. As the basis for its determination, the court referenced and adopted its credit calculation from the initial sentencing. Thus, it is apparent these 648 presentence credits consist entirely of actual credits.

Lamoureux contends the court erred in denying her any presentence conduct credits because her Senate Bill No. 1437 petition resulted in her murder conviction being vacated. Thus, according to Lamoureux, section 2933.2, subdivision (c) no longer applies to her. The People argue the issue of Lamoureux's entitlement to presentence conduct credits is moot. In the alternative, they claim Lamoureux was validly "convicted of murder" (§ 2933.2, subd. (a)), notwithstanding the changes effectuated by Senate Bill No. 1437, and section 2933.2, subdivision (c) therefore still applies to her.

We agree with the People that the issue of Lamoureux's entitlement to presentence conduct credits is moot. "As a general rule, an appellate court only decides actual controversies. It is not the function of the appellate court to render opinions [' " ']upon moot questions or abstract propositions, or ... declare principles or rules of law which cannot affect the matter in issue in the case before it.[' " '] [Citation.] '[A] case becomes moot when a court ruling can have no practical effect or cannot provide the parties with effective relief.' " (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380.)

As noted, Lamoureux has completed her new custodial term and been released from prison. She already has more than enough excess custody credits (1,400) to be applied against, and fully eliminate, her $560 restitution

23

fine.  (See *ante* Part III.B.)  An award of presentence custody credits cannot operate to eliminate or reduce her parole supervision period.  (See *ante* Part III.A.)  Further, an award of presentence conduct credits to Lamoureux would not remove any stigma of criminality.  (See *People v. Buell* (2017) 16 Cal.App.5th 682, 688.)  Regardless of the number of presentence conduct credits she receives, our judicial records will reflect that Lamoureux was convicted of felony murder, filed a successful petition for relief under Senate Bill No. 1437, and was resentenced to a prison term of six years.

As no adverse collateral consequences would be avoided or ameliorated by an award of presentence custody credits, the issue is moot.[9]  (*People v. Petri* (2020) 45 Cal.App.5th 82, 92–93 [defendant's entitlement to additional conduct credits was moot because defendant was released from custody and was not ordered to pay amounts against which excess custody credits may be applied]; *People v. Valencia* (2014) 226 Cal.App.4th 326, 327, 329 ["any contention concerning inadequate presentence credits is moot"].)

IV

DISPOSITION

The judgment is modified to reflect that Lamoureux's $560 restitution fine (§ 1202.4, subd. (b)) is deemed satisfied in full by application of her excess custody credits (§ 2900.5).  In all other respects, the judgment is affirmed.  The clerk of the superior court is directed to modify the abstract of

---

[9]    Lamoureux claims the award of zero presentence conduct credits renders her sentence "facially illegal" and marred by a "clerical error" subject to our correction.  These arguments are inapposite to the issue of mootness.  Even assuming the failure to award presentence conduct credits was erroneous, "any determination by us that the trial court erred would have no practical effect" for the reasons already discussed.  (*Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2013) 217 Cal.App.4th 62, 81.)

24

judgment to reflect this modification and to forward a copy of the amended abstract to the Department of Corrections and Rehabilitation.

McCONNELL, P. J.

WE CONCUR:

BENKE, J.

HUFFMAN, J.